Nott, J.,
delivered the opinion of the court:
This is the second suit brought by the claimant in this court upon the same cause of action. In the former case, judgment went against the claimant on demurrer to his petition.’ The defendants now plead that judgment in bar. The claimant objects, and’ shows by the opinion of the court that his former petition was in fact dismissed for a defect, now remedied, in not stating that he owned and tendered certain horses which the defendants had agreed to receive. The defendants reply that his petition did in fact contain such averments, and that if the judgment of the court was wrong he should have appealed.
*37 These positions assumed by the respective counsel admit of some modification and explanation; but for the purpose of considering the question of law which they present, we will assume each position to bo correctly taken and accurately stated.'. .
It may be noted, first, that the counsel for the defendants, in addition to the general principles of a common law estoppel, cites and relies upon a special statutory estoppel created by the act reconstituting this court. (Act 3d March, 1863, 12 Stat. L., p. 765, § 7.)
The seventh section of that act relates to the payment of the “final judgments” of this court. But to the section are appended three provisos. The second of these declares “ That such payments shall he a full discharge to the United States of all claim or demand touching any of the matters involved in the controversy and the third, “ That any final judgment rendered against the claimant on any claim prosecuted as aforesaid shall forever har any further claim or demand against the United States arising out of the matters involved in the controversy.”
It is not perceived'by us that these provisions relate to judgments other than those rendered upon the merits, nor that they change the rule of the common law, nor that they wei’e intended to do more than attach to the final judgments of this court the conclusiveness which the common law ascribes to the final judgments of all courts of competent jurisdiction. The words, twice used, “ of the matters involved in the controversy,” seem to point simply to the well settled doctrine of all courts of the common law.
' At the time when this court was invested with judicial power, it had become the custom of claimants in and about Congress so soon as they procured relief to immediately seek more. Thus, on the claim of Fisher, of which the history is given in Gordon’s Case, (1 C. Cl’s R., p. 1,) there was first allowed $8,873 for property destroyed by United States troops; then $10,0 for an error of calculation in the first “ aioardf then $8,997.9.4 for interest j then $10,004 89 for more interest; then $39,217 50 for property previously found not to have been destroyed try United States troops ; and finally $66,519 85 on a “ revision ” of the previous awards. The provisos cited from the act of 1863 were probably inserted to prevent such legislative leniency from being misinterpreted into a rule of judicial action.
But an important fact should be noted here; and it is, .that *38 while the defendants’ demurrer in the former suit was general in alleging- that the matters and things set forth in the petition were not sufficient in law to maintain an action, it also alleged, as a specific ground of demurrer, “ that the petition shoics that the claimant never delivered, or offered to deliver, any portion of the horses which he so contracted to furnish?
The court gave to the petition the same construction ; for it is said in the opinion: “ None of the horses toere ever offered for acceptance.” And again: “ He [the claimant] never attempted to performTherefore, the objection taken by the demurrer, and the judgment thereon rendered by the court, were for the real or supposed want of a fact which the. claimant, by his petition in the present case, supplies: and the question is, whether the bare record in the former suit, and the judgment rendered therein, conclude the claimant in this, irrespective of the construction given to the petition' by both the defendants and the court, and without regard to the specific facts which, by judicial construction, were actually determined and adjudicated.
u Estoppels,” says Coke, “ are odious,” and the context implies that they arc not, like warrantees, “ favored in law.” (Co. Litt., 365, b.) And in his second and third rules regarding estoppels, he Jays down this doctrine: “ That every estoppel, because it concludeth a man to allege the truth, must he certain to every intent, and not to be taken by argument or inference.” u Every estoppel ought to be a precise affirmation of that which . maketh the estoppel, and not be spoken impersonally; as if it be said ut dieitur quia impersonalitas non concludit nee ligat; impersonalis dieitur, quia sine persona. Neither doth a recital conclude, because it is no direct affirmation.” (Co. Litt., 352, a.) The only contraction of these rules I have found in any of the numerous cases is, that the recitals of a deed are conclusive “ upon all persons claiming under the parties in privity of estate.” Carver v. Jackson, (4 Peters R., p. 1.) Or, as was more broadly held in Jackson v. Parkhurst, (9 Wend. R., p. 209,) such recitals do “ estop parties and privies.”
But the principles so well enunciated by Coke existed long before his time. So long ago as in the reign of Henry YI, “ it seems to have been, laid down as a general rule that no party or privy to a recovery shoiild falsify in the point tried hy a verdict — otherwise, if the issue had been upon a collateral point, and *39 not upon the title, or if the recovery had been by default.'” — Reeve’s Hist. Com. Law, vol. 3, p. 363.
There is no doubt, I apprehend, that in the early administration of justice under the common law, when the purchase of a writ was deemed somewhat of a favor, as well as a right, parties were held to a much stricter accountability for their actions than subsequently, and certainly than at present prevails. Thus, in Ferrer’s Oase, (Co. Reps., Part YI, p. 7 :) “ Between Ferrer and Arden, these points were resolved: 1, when one is barred in any action, real or personal, by judgment on demurrer, confession, verdict, &c., he is barred as to that, or the Wke action of the Mice nature, for the same thing, forever.. For, expedit reipublicce ut sit finis litiumP And iii the same case, alluding to the various cases where a party was Avithout remedy — as one in the remainder, Avhere the tenant for life had suffered a recovery, or the wife Avhere the husband had allowed a recoArery by default — he remarks that, “ in the judgment and policy of the law, it Avas thought more profitable to the commonAvealth, and more for the honor of the law, to leave some withorit remedy, (as is aforesaid,) and to put others-to their writ of right, without any respect of coverture, &c., than that there should not be an end of actions and suits j” and he at the same time bewails the modern “ neglect” of the “ rule and reason of the ancient common law.”
Yet, in Robinson’s Case, (Part V, 33 Co. Reps.,) “it was unanimously agreed,” though not till “ the cause was well debated at the bar and bench,” that the mistaking of his action is no bar nor estoppel ” to a party “ to bring Ms true action.” The plaintiff there had brought an action of debt as administrator upon, a bond, when he Avas in fact an executor; and on the defendant’s plea to that effect it had been adjudged against the plaintiff, and Ids suit dismissed. In a second action upon the bond, brought by the executors, the defendant pleaded the former judgment in bar, “ he pretending that forasmuch as one of the plaintiffs was barred in the former action, that they should be barred forever.” Hence, Gilbert (1 Ev., p 201) lays down the rule, that a party suing in a different capacity (as in character of administrator or executor) will not be bound by the former recovery. So also Bouvier (3 Ins., § 3098) recognizes the same test.
Although the reason of the rule of the common law has -been *40 frequently, lost sight of in modern, decisions, the rule itself was not the arbitrary enactment of a court, but the embodiment of a maxim, which, like all maxims of the common law, was founded on sound sense and justice : Nemo debet bisvexaripro eadem causa. It at length found authoritative and final form in the celebrated rule enunciated by Lord Walsingham, better known from this rule as Lord Chief Justice DeGrey, in answer to the two questions submitted to the judges by the House of Lords in the Duchess of Kingston’s Case, (20 State Trials, p. 538:)
,« From the variety of cases relative to judgments being given in evidence in civil suits, these two deductions seem to follow as generally true : 1. That the judgment of a court of concurrent jurisdiction directly upon the point is, as a plea, a bar; or as evidence conclusive between the same parties upon the same matter directly in question in another court. 2. That the judgment of a court of exclusive jurisdiction, directly upon the same point, is in .like manner conclusive upon the same matter between the same parties coining incidentally in question iir another court.”
The rule has been repeatedly recognized and affirmed: 1 Phps.Ev.,326,7; Cow. & Hill’s Notes, p. 818, n. 571, p. 819, n. 574; Brockway v. Kinney, 2 John’s R., p. 210; Williams v. Jackson, 5 id., p. 501; Ruggles v. Sherman. 14 id.; Gardner v. Buckbee, 3 Cow. R., 126; Coles v. Carter, 6 id., p. 691; Lawrence v. Hunt, 10 Wend. R., p. 82; Walsh v. Ostrander, 22 id., p. 180; Wood v. Jackson, 8 id., 37 ; Doty v. Brown, 4 Comst. R., p. 73; Trevivan v. Lawrence, (2 Smith L. C., p. 435.)
There probably is not, in all of the decisions of courts of the common law, an instance of a legal principle so successfully reduced to a legal rule; nor of a rule that has been so universally famous and so implicitly followed. Many questions have arisen as to its application, such as who were parties, more often who were privies; but the rule itself has been unquestioned. A single exception to this universality of acceptation, so far as I have observed, has been made seemingly in some of the American courts, founded upon that clause which says that a former judgment is “ as evidence eonclusiveP It was observed. that a train of both English- and American decisions held that where a party had neglected to plead a former judgment as an estop-pel, but gave it in evidence on the-trial, it was as evidence but •prima facie ; and hence it was argued that the rule stated the *41 operation of a former judgment as evidence too strongly, and that the words “as evidence conclusive” should give place to the words “ as evidence prima facie.” (Jackson v. Wood, 3 Wend. R., p. 35; Wood v. Jackson, 8 id., pp. 21, 37.) But the editor of the Leading Cases, with deeper learning, has shown that the language of Lord Walsingham extends not to cases wherein a party has voluntarily waived his estoppel'and seeks merely to use his former judgment as evidence on the trial, but that it was meant to apply and does still apply to that class óf cases where, by the rules or peculiarities of pleading, a party has no means of setting up the estoppel. (2 Smith L. C., p. 445.) In such, a party having waived nothing, has lost nothing, and the estoppel, being proven by the former judgment, is as conclusive as though having had an opportunity to plead it] he had done so. And it is a curious spectacle to see the late eminent Secretary of State, Mr. Seward, when quite a young man, disapproving of this qualification of the rule, and, as a member of the New York Court of Errors, commenting on-the opinion of one who was shortly to be his political opponent, then an eminent judge, as he was afterward an eminent statesman, Mr. Justice Marcy; and with a judicial instinct and "simplicity of reasoning much above his legal acquisition, pointing in the base before the court to the principle elucidated in the Leading Cases, and insisting that, under the peculiar statutes of New York, which precluded the party from pleading his estoppel, it should be as evidence as conclusive as if it had been pleaded in bar. (Wood v. Jackson, 8 Wend. R., p. 40.) It should be noted, however, that the error of the qualification escaped not the wide learning of Chancellor Walworth in the same case, though it seems to have been accepted without comment by Mr. Justice Nelson in the later case of Lawrence v. Hunt, (10 Wend. R., p. 85.)
Lord Walsingham is careful to append to his celebrated rule this express reservation: u.Bnt neither the judgment of a eon-current nor of an exclusive jurisdiction is evidence of any matter which came collaterally in question, though within their jurisdiction ; nor of any matter incidentally cognisable ; nor of any matter to be inferred by argument from the judgment.” And under this, writers and judges have been most careful to state that the precise point in issue must have been actually decided in the former action. - • ■
*42 Thus Starkie, (1 Ev., 199:) “ Where, however, the real merits of the present action have not been at all inquired into in a former proceeding, issue may he taken on the fact, the judgment being pleaded in bar. Thus a recovery in one action cannot be pleaded in bar of a second where no evidence on the trial of the first action was given in support of the claim on which the second is founded.”
Thus Chitty, (1 Pls., 604:) “ Where the matter in question has been tried upon a particular issue between the same parties, in the former suit, and there lias been a finding thereon by the jury, such finding operates as an estoppel by matter of record, provided it be specially pleaded and relied on as such.” And see as to form of plea, 3 id., 1062.
Thus Bouvier, (3 Inst., § 3101:) “To make a judgment conclusive upon the parties, it is required that it should have been rendered upon the matters, directly in issue, and not on a thing incidentally brought in controversy during the trial. A record is conclusive only on matters actually tried.”
The modern English cases hold with equal tenacity to the requirement of certainty. In Wright v. Bucknell, (2 Barn. & Adol., p. 251,) Lord Tenterdeh said: “ An estoppel should be certain to every intent, and, therefore, if the thing he not precisely and directly alleged, or he mere matter of supposal, it shall not he an estoppel.” In Carter v. James, (13 Mees. & Wels., p. 147,) Baron Alderson said: “ In order to make out that this is a good estoppel, the idea ought to show that the point intended to he relied on as a defense was, in the former proceeding, decided against the plaintiff.”
The American cases have been equally decided. In one heretofore alluded to, Jackson v. Wood, (3 Wend. R., p. 35,) Mr. Justice Marcy said: “ Throughout the whole of his very able and elaborate opinion in that case, (Outram v. Morewood,) Lord Ellenborough is exceeding careful to limit the conclusiveness of a former judgment to the identical matter put in issue by the pleadings. ‘ A judgment, therefore,’ he says, ‘ in each species of action is final only for its own proper purpose and object and no further.’” “If the defendant,” adds Justice Marcy, “could have pleaded the former judgment as an estoppel, and had pleaded it with all possible averments, his plea would -not have shown enough to create á bar to the plaintiff’s recovery, .because it would not have appeared from the record that the *43 fact now in issue was in the former suit and directly decided therein.” And in the same case, when in the Court of Errors, Chancellor Walworth added, “ A verdict cannot be urged as an estoppel to the litigation of a fact which was not absolutely necessary to the finding of the verdict in the previous suit.” (8 Wend., p. 18.)
In another New York case, (Young v. Rummell, 2 Hill R., p. 480,) a very eminent judge, Mr. Justice Bronson, lays down the rules to be deduced from modern cases, and “maintained both upon principle and authority.” These rules, I may add, were approved by Chief Justice Buggies in a case in the New York Court of Appeals, (White v. Coatsworth, 2 Seld. R., p. 142.) The third is as follows: “ The judgment is only evidence by way of bar when the same matter was directly in question in the former suit. The record must show that the same matter might have come in question on the former trial, and then the fact that it did come may be sliowm by proof aliunde.”
For the better attainment of this certainty, courts in modern times have admitted evidence aliunde the record to show that a matter which might have come in controversy in the former suit actually did come and was decided. A different idea seems to have formerly prevailed. Chief Justice Hosmer in Smith v. Sherwood, (4 Conn. R., p. 276,) held that, in order to constitute an estoppel by a former judgment, the precise point which is to create the estoppel should have been put in issue and decided; and that the fact that it was so put in issue should appear from the record alone. The same doctrine was laid down by Mr. Justice Swift in Church v. Leavenworth, (4 Day’s R., 274,) and in Ryer v. Atwater, (id., p. 431,) wherein it is held that if there were several distinct points in issue a verdict cannot be introduced to prove one. In the courts of New York the rulings were not uniform or clear till the decision of Mr. Justice Woodworth in the case of Gardner v. Buckbee, (3 Cow. R., p. 126,) in which he says: “ The record [of the former suit] shows that it was competent on the trial to establish the fraud of the plaintiff. Whether fraud was made out and whether that was the point upon which the decision was founded, must necessarily be proved by evidence extrinsic the record.” This was subsequently approved in Coles v. Carter, (6 Cow. R., p. 691.) Though not positively decided, it was recognized by the Supreme Court of that State, (Young v. Rummell, 2 Hill’s R., p. 480;) by *44 its former Court of Errors, (Jackson v. Wood, 8 Wend. R., p. 1;) and by its present Court of Appeals, White v. Coatsworth, (2 Seld. R., p. 142.) But, at length, it was decisively held in Doty v. Brown, (4 Comst. R., p. 71,) an action of replevin, where the case turned on the validity of a' bill of sale alleged to be fraudulent, and the defendant relied upon a judgment of a justice of the peace in a former suit, that the justice might be called as a witness to prove that he had rendered his judgment in favor of the defendant, on the ground that the bill of sale Avas fraudulent. The Supreme Court of the United States, in the case of Miles v. Caldwell, (2 Wallace R., p. 35,) has cited and approved Doty v. Brown, and, resting its decision chiefly upon that case, has held that the charge of the judge to the jury in a former action in ejectment is admissible in evidence to show what questions ivere submitted to and passed upon by the jury.
In the earlier case of Young v. Blade, (7 Cranch R., p. 565,) the same principle had been applied to actions of assumpsit:; and in the later case of the Packet Co. v. Sickles, (5 Wallace R., pp. 580, 592,) Mr. Justice Nelson says: “ As 'Ave understand the rule in respect to the eonclusiveness of the verdict and judgment in a former trial betiveen the same parties,- Avhen the judgment is used in pleading as a technical estoppel, or is relied on by way of evidence as conclusive per se, it must appear by the record of the prior suit that the particular controversy sought to he concluded was necessarily tried and determined — that is, if the record of the former trial shows that the verdict could not ■have been rendered , without deciding the particular matter, it Avill be considered as having settled that matter as to all future actions between the parties; and further, in cases where the record itself does not sIiqav that the matter was necessarily and directly found by the jury, evidence alhmde consistent with the record may be received to piwe the fact; Zmt even where it appears from the extrinsic evidence that the matter was properly within the issue controverted in the former suit, if it he not shown ihat the verdict and judgment necessarily involved its■ consideration and determination, it will not he concluded.”
By all of these cases it is apparent that it is not the formality of a judgment on the same cause of action which constitutes an estoppel; but, as was said by Lord Hardwicke in Hugh Smithson’s Case, (cited in Buller’s N. P., 228,) “ it is an estab- *45 lisbed rulo of law that a fact which has once been directly decided, shall not be again disputed between the same parties.” ■ In Coke’s time, as we have seen, the application of the general principle was much more severe than it has since been, extending’ not only to judgments on “ demurrer,'confession, verdict," &c., but even to judgments on nonsuit, as against the plaintiff, a'ud 'by default as against the defendant. (Ferrer's Case, Part VI, pp. 8, 9.) And in personal actions the application was even more strict. “ For there is a difference between real actions and personal actions. For in a personal action, as debt accotmt, &c., the bar is perpetual; for the plaintiff cannot have an action of a higher nature, and, therefore, in such case he has no remedy, but by error or attaint.” (Id., p. 7.) But with the system of costs, by which a party recovers damages to a certain extent for the vexation of a useless suit, the earlier severity seems to have disappeared, and it is certain that since the Duchess of Kingston's Case, now nearly a hundred years, a nonsuit against the claimant, or a default suffered by a defendant, would not estop the one or the other from alleging the truth of any fact at issue in the case.
With regard to estoppels from judgments on demurrer1 there is a singular silence in the modern books. It might even be inferred from the elementary works that with the relaxation of . the rule of the u ancient common law,” courts had gone to the extreme of holding that an e'stoppel arises only upon verdict where a fact actually controverted between the parties has been actually decided upon evidence; in other words, that h determination upon a fact admitted has not the legal significance of a determination upon a fact controverted; that a defendant is not vexed as to a fact which he himself admits, and that his opponent’s declaration or plea is only to be taken for what it is worth as an admission in that suit.
This principle has been recognized and applied in the English courts. In the case before cited, of Carter v. James, (13 Mees and Wels., p. 137;) Baron Alderson, after showing of the former suit that the defendant’s i>lea contained several allegations, says: “ This latter allegation alone was traversed'by the plaintiff in his replication, so that the only issue the jury had to try was whether the bond Avas given for that interest, among other debts, .amounting altogether to the sum of £600.‘ The jury found that fact; and it was incidentally in that case taken for *46 granted that if the bond was given as a security for that debt,, and that amount of interest, the interest so secured was usurious according to the previous averments of the plea, which were not put in issue by the plaintiff, but admitted by him for the purposes of that suit, and, as I apprehend, for the purposes of that suit only. If, therefore, the plaintiff were to be deemed estopped now, when the point now in issue ivas not raised at all in the former suit, he would be deemed estopped by the finding of a matter which he never disputed, and on which the jury gave no verdict and the court no judgment. I take it, the party is only estopped by the form of the record in that action from recovering on the bond, or disputing that any of the.issues then determined by the .jury were wrongfully decided; but that he As not estopped by any of the other, foots which were talcen in that ease to be true merely for the purpose of deciding the question at issue. It is only for that purpose that the plaintiff must be considered as having admitted these facts in pleading. If, according to the ancient practice, the facts had been pleaded with a protestation, they would have been saved for the purposes of subsequent suits; and, although it is not necessary, according to the modern practice, to make any protestation at all, the same principle still prevails.” And see the elaborate opinion of Baron Parke as to the admission in a bill in chancery, Boileau v. Rutlin, (2 Exch. R., p. 665.)
It is at this point, I apprehend, that cases grouped under the general title of res judicata fall properly into two classes : 1st. Cases where the judgment has been rendered on the defendant’s demurrer, where no facts have been controverted and no evidence given; in such the judgment, if rendered on the merits, is a bar to any subsequent action on the same cause and for the same relief; but the specific facts admitted by the .pleadings are not to be taken as facts controverted and established by evidence, and cannot be set up by way of estoppel in any different action .where they may come in controversy. 2d. Cases where a controverted fact directly in issue has been judicially established upon evidence: in such the fact itself may be used in any subsequent action of a not higher nature, where it may be again in controversy. Thus in the case of Outram v. Morewood, (3 East. R., p. 353,) the plaintiff sued in trespass for entering his close and carrying away coals. The defendants plead title in one of themselves. The plaintiff re *47 plied by setting up a former verdict against tlieir title, rendered in an action for another trespass. And of all the decisions that have been rendered in this branch of the rule none has been more frequently quoted or more invariably approved than the opinion of Lord Ellcnborough in this case of Outram v. Morewood. “ The recovery of itself,” he says, “ in an action of trespass is only a bar to the future recovery of damages for the same injury ; but the estoppel precludes parties and privies from contending to the contrary of that point or matter of fact tohieh, having been once distinctly put in issue by them or by those to whom they-arc privy in estate or law, has been, on such issue joined, solemnly found against them.”
Commenting upon that opinion, one of the ablest of the former judges of New York, Mr. Justice Sutherland, has said in Burt v. Sternburgh, (4 Cow. R., p. 562 :) It is well remarked by Lord Ellenborough, in Outram v. Morewood, that “ the operation'and effect of a former recovery,"if it operate at all as a conclusive bar, must be by way of estoppel; that it is not'the' recovery but the matter alleged by the party and upon which the recovery proceeds, tohieh creates the estoppel.”
In White v. Coatsworth, (2 Seld. R., p. 142,) the New York court of appeals held, in regard to a former adjudication pleaded in bar, (it being the finding of a jury that no rent was due, in summary proceedings by alandlord to recover possession for the non-payment of rent,) per Edmonds, J.: “The question is not, as was urged on the argument, whether that adjudication was evidence that no rent was due, but it is simply whether, that fact having been passed upon between the same parties in a tribunal having power to pass upon it, those parties are not now estopped from mooting the question in another action.”
• Now, in 'the case at bar the defendants do not seek to use any fact as if controverted and established by the former suit, but simply to plead their recovery itself as a bar to the recovery of the same damages on the cause of action. The decisions cited show that this may be done where the recovery was a trial on the evidence. The recent case of Goodrich v. .The City of Chicago (5 Wallace K.., p. 566) is decisive of the right where the former recovery was upon the defendant’s demurrer. In that case the plaintiff sued the city in the Supreme Court of Illinois to recover damages for the sinking of their steamer on the Chicago River, caused by the negligence of the defendants *48 in not removing a sunken wreck. The defendants put in a general demurrer, and the court rendered final judgment thereon against the plaintiff. The plaintiff then filed a libel in the United States district' court on the same cause of action. The city thereupon set up the former adjudication in bar, Of it Mr. Justice Swayne, in delivering the opinion of the Supreme Court of the United States, says: “ Upon a careful examination . of the declaration and of the libel we are constrained to say there is no such difference in the cases which they respectively make as can take this case out of the operation of the principles of res adjudicata.”
But the judgment here referred to, though upon demurrer, must still be a judgment upon the merits. Where the former suit lias been adjudged against the plaintiff, not upon the facts but for a defect of fact, as is the case here, it is precisely analogous to a judgment of nonsuit, and does not bar the second action. There a plaintiff establishes .certain- facts by evidence; and failing to establish all that may be necessary to complete a case, he is nonsuited, and after paying his costs may bring another action. The defendant cannot set up the first as a bar; for nothing was determined save the legal deduction that the plaintiff had failed to prove something essential to a recovery. Hero the claimant established certain facts by the allegations of his petition, they being not controverted by the demurrer, but admitted; the defendants objected that he had not established (that is, alleged) facts sufficient; the court so decided. Leave to amend his petition would have been a favor, and not aright. It was not extended to him; he has been subjected to, the expense and delay of second suit. Though he had the right of appeal, it would not have supplied what the defendants insisted was the omission of a material fact. That he deemed the. fact to be immaterial then, should not preclude him from averring it now. He stands precisely in the plight.of a plaintiff nonsuited because his evidence was insufficient. The defect which the one may make good by proof, the other may supply by pleading. The defend- • ants controverted no fact, and hence established none. The old doctrine, that the mere bringing of one personal action was a perpetual bar to ever bringing a second on the same cause of action, has passed away, and is to be regarded as an abuse and not.a just application of the principle, nemo debet bis vexari.
*49 The same conclusion can be reached by authority, and indeed has hardly been questioned since the case of Leaping and Ked-gewin, (1 Mod. B., p.207:) “Ah action in-the nature of a'conspiracy was brought by the plaintiff against the defendant, in which the declaration was insufficient. The defendant pleaded an ill plea, but judgment was given against the'plaintiff upon the insufficiency of the declaration.’^ “The plaintiff brings a new action and declares aright. The defendant- pleads the judgment in the former action, and recites the record verbatim as it was. To which the plaintiff demurs.” And the court, in common bench, per Chief Justice North, said: “ There Is'no question but that if- a man mistakes Ms declaration, and the 'defendant demurs, the,plaintiff may set it right ñn a second action.” And the court then proceeds to consider the effect of the judgment where the defendant did not demur, but pleaded an-“ill plea.”
In the case of Gilman v. Rives, (10 Peters R., p. 298,) Mr. Justice Story, who delivered the opinion of the court, says: “ The objection may be urged that the judgment upon a general demurrer in this case will be a good bar to every future suit brought against the present defendant upon the same debt, - or against him and the other judgment debtor. We are of a different opinion as to both, if the declaration be properly framed; for a judgment that a declaration is bad' in substance (which alone, and not matter of form, is the ground of a general demurrer) can never be pleaded as a bar to a good declaration for the same cause of action. The judgment is in no just sense a judgment on the merits.”
In the case of Hughes v. The United States, (4 Wallace R., p. 232,) Mr. Justice Field, who delivered the opinion of the court, says: “In order that a judgment may constitute a bar to another suit, it must be rendered in a proceeding between the same parties or their privies, and the point of controversy must be the same in both cases, and must be determined on its merits. If the first suit was dismissed for defect of pleadings, or points, or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground that did not go to the merits of the action, the judgment rendered wdll prove no bar to another suit.”
The case cited on the argument by the learned counsel for *50 the defendants, Durant v. Essex Co., (7 Wallace R., p. 107,) is really a case against the defendants here. The point of the decision is simply that where, in a suit in equity, a decree is rendered dismissing' the bill without words of qualification, such as “ without prejudice,” “or other terms indicating a right or privilege to take further legal proceedings on the subject,” it is presumed to Joe rendered on the merits.” Mr. Justice Field, in delivering the opinion of the court, is careful to state that this presumption does not prevail if the decree is made “ upon some other ground which does not go to the merits,” and he points out the fact that in the former case “ testimony ivas talcen on both sides,” and that “ the ease was heard on its merits.”
After a somewhat extended review of this branch of the law, I- am inclined to think that no case can be found, and certainly none in the federal courts, where a judgment rendered on demurrer, alleging the want of a material fact in the declaration, has been deemed a bar to a second action presented bja declaration wherein the material fact omitted from the first is sufficiently averred. The concurrent ruling of both the American and English courts seems to be that a judgment rendered for the wrant of a specific fact in the declaration is not a judgment upon the merits. A conclusive test I take this to be that where the declaration in the second suit, by reason of newr averments, is not objectionable to the demurrer in the first, the issue is changed, and the latter suit is not res judicata.
If it were necessary to pursue the subject further, I should say that the principle now established by the Supreme Court, that parol evidence is admissible to show that what properly might have been decided under the pleadings was in fact passed upon at the trial, is applicable to decisions on demurrer so far as to warrant us in looking into the opinion rendered. In this case that opinion shows that the former decision went upon the precise objection taken by the defendants, “ that the claimant never delivered, or offered to deliver, any portion of the horses which he contracted to furnishor, as the opinion states, it, “ none of the horses were ever offered for acceptance.” It is true that the court then proceeded to examine the question whether certain other facts alleged in the petition excused the want of a tender of the horses, and the examination certainly bears a resemblance to a decision upon the merits. But it is a decision upon the merits remaining, and with the material fact omitted. *51 Sucb a decision would be a judgment upon the merits, if the claimant were now in court upon a declaration which still omitted to allege the tender of the horses, and still set up the same insufficient matter as equivalent. But the allegation in the present petition, that the claimant uwas ready and twilling, and offered to comply with said contract, and deliver the horses specified in such contracts, of the hind and quality therein specified, and in the manner therein specified, and at the places specified,” takes the petition out of the scope of the former demurrer, and thereby relieves the case from the effects of that decision. The facts being different, and the issue different, the ease cannot be res judicata.
Moreover, before there can be an estoppel by record, there must have been a distinct issue, of law or of fact, joined, tried, and determined. If the defendants are right in saying that the former petition contained a sufficient averment of tender, then they were wrong there in tendering an issue of law on the contrary defect. What they called a demurrer they should have called a plea, for it alleged that there had been no tender. In short, the pleadings in the former suit meant one thing then, and mean another thing now, and fail to present a distinct issue distinctly determined.
This case presents also a curious illustration of another principle of the law of estoppels, as expressed in the quaint language of Coke: “ JSstoppe cometli of the French word estoupe, from whence the English word ‘stopped;’ and it is called an estop-pel or conclusion, because a man’s owne act or acceptance stop-peth or closeth up his mouth to alleage or plead the truth.” (Co. Litt. 352, a.) Now here we have the defendants’ own act of averring, by demurrer in the former suit, that the former petition did not allege what they now aver it did allege. Does not that former act of so alleging by demurrer, and going to trial - thereon, and recovering a judgment against the claimant upon that precise allegation, close up their mouths now “ to alleage or plead” the reverse? I think it does, and hence that the case is brought within the “ sixthly” of Coke: “Estoppell against estoppell doth put the matter at large.”
The demurrer is sustained; the special plea in bar is overruled, and the defendants will answer over.