## OERLIKON MACHINE TOOL WORKS BUEHRLE & CO. v. UNITED STATES.

### No. 50229.

United States Court of Claims.

Feb. 5, 1952.

Charles C. Parlin, New York City, for the plaintiff. George C. Seward, Thomas L. Higginson, and Shearman & Sterling & Wright, New York City, were on the briefs.

Bernard Wohlfert, Washington, D. C., with whom was Asst. Atty. Gen. Holmes Baldridge, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

This case is before us on defendant's motion to dismiss plaintiff's petition because, it says, the judgment of this court entered on March 6, 1951, is *res judicata* and bars the present action, and also because the action is barred by the statute of limitations.

The decision rendered on March 6, 1951, was in case No. 49696, styled Oerlikon Machine Tool Works Buehrle & Co. v. United States, reported in 118 Ct.Cl. 614. In that case plaintiff sued the United States because, it alleged, the United States had purchased from manufacturers in the United States Oerlikon antiaircraft cannon and Oerlikon ammunition, to which manufac-

turers plaintiff, at defendant's request, had made available their gun design, working drawings, toolings, formulas, technical advice, etc. Defendant filed a motion to dismiss on the ground plaintiff's petition did not state a cause of action.

We held that the defendant was not liable, for the reason that at the time the Government procured these cannon and ammunition from American manufacturers, these manufacturers were already in possession of the pertinent drawings, designs, toolings, formulas, etc., necessary for their production, these things having been furnished to them by plaintiff at the request of the British Purchasing Commission, which had purchased from them cannon and ammunition long prior to the time that the United States had done so. This fact, we held, negatived the allegation that these things had been furnished to American manufacturers at the request of the United States, and that, therefore, there could not be implied a contract on the part of the United States to pay plaintiff therefor. Accordingly, we dismissed plaintiff's petition.

The present case is by the same plaintiff, on the same cause of action, and the defendant says that our former decision is *res judicata.* Plaintiff says that it is not, because the decision was based on its failure to allege facts necessary to state a cause of action, and that in such case a former decision is not *res judicata* in a later proceeding. Plaintiff's position is sustained by the authorities. Spicer v. United States, 5 Ct.Cl. 34; Gould v. Evansville & C. R. R. Co., 91 U.S. 526, 23 L.Ed. 416; Wade v. Peters, 89 Or. 233, 173 P. 567, 13 A.L.R. 1100; Cohen & Sons v. M. Lurie Woolen Co., 232 N.Y. 112, 133 N.E. 370, 371; and cases cited in 13 A.L.R. 1104–1123, and 106 A.L.R. 437, 444–445; Restatement of the Law of Judgments, sec. 50, comment c.

In the former case we were of the opinion that all of the circumstances alleged by plaintiff to show an implied contract on the part of the United States to pay plaintiff for the use by American manufacturers of these designs, working drawings, toolings, formulas, etc., were set at naught by the allegation that these things had been fur-

nished to these American manufacturers at the request of the British Purchasing Commission and that the United States had not ordered these cannon from these American manufacturers until long after they had been manufactured by them for the British Purchasing Commission.

We said in our former opinion: "The petition does not allege that after the defendant started having these guns manufactured for its account that plaintiff furnished any further technical advice or 'know-how' to assist in their manufacture. No express contract is alleged." For the failure to make this allegation, among others, we held that plaintiff's petition did not state a cause of action.

We further said: "There is no allegation that the United States undertook to perform the obligations imposed on the British Purchasing Commission by this agreement, nor are any facts alleged from which we can infer an agreement by the United States to do so." For the failure to make such an allegation we also held that the plaintiff's petition failed to state a cause of action.

It appears, therefore, that plaintiff's petition in the former case was dismissed for the failure to allege facts necessary to state a cause of action and, therefore, it is not *res judicata* in a later proceeding where the necessary facts are alleged.

We, moreover, overlooked an allegation in the bill of particulars filed by plaintiff in the former proceeding. In the second section of plaintiff's bill of particulars it first set out the organization of the American Oerlikon Gazda Corporation, which organization, it said, entered into a series of subcontracts with various manufacturers in the United States for the manufacture of parts for the Oerlikon cannon, and that later these parts were assembled by the American Oerlikon Gazda Corporation. It was then alleged: "Orders for the cannon were placed with said corporation by the British Purchasing Commission and the British Purchasing Commission undertook to secure from petitioner for the benefit of the British Purchasing Commission and the Navy Department said manufacturing

rights and to this end signed a document dated March 8, 1914, a copy of which is attached hereto as Exhibit A, said Exhibit A being hereinafter referred to as the 'American License Agreement.' "

Finally it was alleged in this section: "After the adoption of the Lend-Lease program in March, 1941, the Navy Department informed petitioner that it was taking over the manufacturing program for the manufacture of Oerlikon 20 mm cannon and pursuant thereto asked for the resignation of Antoine Gazda as officer and director of the A. O. G. Corporation [American Oerlikon Gazda Corporation], asked for and received an assignment from the British Purchasing Commission of the American License Agreement and, on information and belief, took over the orders theretofore placed by the British Purchasing Commission and caused said Oerlikon 20 mm cannon to be manufactured for the account of the Navy Department."

This so-called "American License Agreement" obligated the British Government to pay plaintiff license fees for the use of their gun designs, working drawings, toolings, formulas, etc. This agreement also permitted its assignment "in whole or in part by the British Government to the United States Government without the further consent of Oerlikon or Gazda."

In our former opinion we said that this licensing agreement was executed subject to the consent of the Swiss Government and that this consent could not be obtained and that the agreement was, therefore, declared to be inoperative and of no effect. We did say, however, that, notwithstanding the fact that it had been declared inoperative, "the parties to the agreement continued to manufacture the gun, and it might be said that this was done under an implied agreement between plaintiff and the British Purchasing Commission to pay plaintiff in accordance with the terms of that agreement, but nothing is alleged to show that the United States ever assumed the obligations of the British Purchasing Commission thereunder."

We were mistaken in saying that nothing was alleged to show that the United States ever assumed whatever obligations the British Purchasing Commission may have had under this agreement. On the contrary, the bill of particulars did allege that the United States "asked for and received an assignment from the British Purchasing Commission of the American License Agreement." If a contract between plaintiff and the British Commission could be implied, to pay plaintiff in accordance with the American License Agreement, by reason of the fact that it continued to order and cause to be manufactured these Oerlikon cannon, then under this allegation of the bill of particulars there was also an implied agreement on the part of the United States to pay plaintiff in accordance with this agreement.

Our former decision is *res judicata* as to the fact admitted by the bill of particulars in the former case, to wit: "At the time the United States Government undertook direct procurement of the Oerlikon cannon, many of the American manufacturers concerned were already engaged in the production of the said cannon for the British Government. They were, therefore, already in possession of the pertinent drawings, designs, and manufacturing 'know-how' necessary for production." That fact was adjudged. But, notwithstanding the adjudication of this fact, the plaintiff's petition might still have stated a cause of action if the additional allegation had been made, "that the United States undertook to perform the obligations imposed on the British Purchasing Commission by this agreement," or impliedly agreed to do so. The petition was dismissed for absence of such an allegation. Now, we discover that in the former case it was, in fact, alleged that the United States undertook to perform the obligations of the British Purchasing Commission imposed upon it by this American License Agreement.

Had we made a definite finding in the former case that the United States did not assume the obligations of the British Purchasing Commission under this agreement, that would have been an adjudicated fact which would be binding in the present proceeding; but we made no such finding; we merely said that there was no allegation that the United States had done so; and

for the failure to make this allegation we said that the plaintiff's petition did not state a cause of action. It now appearing that such an allegation was in fact made, our former decision is not *res judicata* in this present case.

Defendant's motion to dismiss plaintiff's petition on this ground is overruled.

The defendant's next ground of the motion to dismiss plaintiff's petition is that its action is barred by the statute of limitations.

The plaintiff replies that from January 14, 1942, until July 8, 1946, the courts of the United States were not open to it and that, therefore, during this period the statute of limitations was tolled. It says that the courts of the United States were not open to it because of the provisions of section 3 (a) of the Trading with the Enemy Act, 40 Stat. 411, 50 U.S.C.A. Appendix, § 1 et seq., and because of the fact that during this time it, or its sole stockholder, was on the "proclaimed list of certain blocked nationals."

On January 14, 1942 Mr. Emil Georg Buehrle was placed on this proclaimed list, and on July 17, 1942 plaintiff Oerlikon Machine Tool Works Buehrle & Co., was placed on the proclaimed list. Having been placed on the proclaimed list, it says that no person in the United States was permitted "to trade" with it and that the words "to trade", as defined by the Act, included a prohibition against "paying, satisfying, compromising, or giving security for any debt or obligation," and also a prohibition forbidding any person in the United States to "complete, or perform any contract, agreement, or obligation," and also "to have any form of business or commercial communication or intercourse with" the plaintiff.

■ We are of the opinion that these prohibitions effectively closed to the plaintiff the courts of the United States, at least from the date that it was placed on the proclaimed list, which was on July 17, 1942.

Regulations of the Secretary of the Treasury, to whom the President had delegated the powers conferred on him by section 3(a) of the Trading With the Enemy Act, made the foregoing provisions of the Trading With the Enemy Act more definite, insofar as plaintiff's right to bring suit is concerned. On March 18, 1942, the Secretary of the Treasury issued General Rule No. 11 (7 F.R. 2168). This was amended on September 3, 1943 (8 F.R. 12, 287). As amended, this ruling prohibited any person to engage in any trade or communication with an enemy national or to do any act which involved directly or indirectly any trade or communication with an enemy national, unless licensed so to do. An enemy national was defined to include "any person whose name appears on The Proclaimed List of Certain Blocked Nationals," and any "other person acting therefor."

■ Plaintiff's petition does not show whether or not it applied for a license to bring suit on the present cause of action nor whether or not such a license was granted. If such a license had been applied for and denied, we think the statute of limitations would have been tolled so long as plaintiff remained on the proclaimed list, which was at least from July 17, 1942 until July 8, 1946.

For the purpose of the present motion we think it is a fair assumption that no license to bring the present suit was granted. If such is not the case, it can be shown at the trial on the merits. The petition may be defective for a failure to allege an application for and a refusal of a license to bring this suit; but, under all the circumstances, we do not think the petition should be dismissed for this possible defect.

The decisions of the Supreme Court and of lower courts are uniform in holding that the statute is tolled throughout the period during which a litigant is denied the right to come into court to assert his claim. Hanger v. Abbott, 6 Wall. 532, 73 U.S. 532, 18 L.Ed. 939; Braun v. Sauerwein, 10 Wall. 218, 77 U.S. 218, 19 L.Ed. 895; Hopkirk v. Bell, 3 Cranch 454, 2 L.Ed. 497; Sierra v. United States, 9 Ct.Cl. 224; Campbell v. United States, 13 Ct.Cl. 108; Green v. United States, 17 Ct.Cl. 174; Osbourne v. United States et al., 2 Cir., 164 F.2d 767; Chuchuru v. Chutchurru, 10 Cir., 185 F.2d 62; Salvoni v. Pilson, 86 U.S. App.D.C. 227, 181 F.2d 615. Cf. Standard-

Vacuum Oil Co. v. United States, 80 F. Supp. 657, 112 Ct.Cl. 137; Id., 339 U.S. 157, 70 S.Ct. 545, 94 L.Ed. 731.

■ Title 28 U.S.C. § 262 [now § 2501] which bars any claim against the United States unless it is asserted in the Court of Claims within six years after the claim first accrues, excepts the claims of married women, minors, idiots, and persons beyond the seas at the time the claim accrued. It makes no exception of a petitioner to whom recourse to the courts of the United States was denied during the war. The statute says that "every claim against the United States * * * shall be forever barred unless the petition" is filed within six years. It then enumerates certain exceptions to this rule, and then states, "but no other disability than those enumerated shall prevent any claim from being barred * * *." Notwithstanding this definite provision, we think we must hold, on the authority of the cases above cited, that the statute is tolled so long as access to the Court of Claims is denied.

None of the statutes of limitation discussed in the foregoing cases contained an exception in the case of a person denied access to the courts. Although they did not, nevertheless the courts have uniformly held that statutes are tolled during the time the courts are not open to a litigant.

These holdings are of long standing. They are holdings of most respectable tribunals, both the Supreme Court and others. They have never been questioned either by any court or by Congress. They must be accepted as an established exception to all statutes of limitation.

These decisions say that there is to be deleted from the statutory period the time during which the courts were not open to a claimant. Applying this rule to a suit in the Court of Claims it would mean that a litigant has the full six years within which to bring his suit plus any time during which access to the court was denied him.

This is the rule the majority of this court thinks should be applied. Their reasons therefor are stated in Marcos v. United States, Ct.Cl., 102 F.Supp. 547. The writer of this opinion does not agree with this. He thinks that we are in effect adding an exception to the six-year rule in addition to those enumerated in the statute, and that this additional exception should be subject to the same limitation placed upon those exceptions which are enumerated. That is to say, since the statute says that the claims of married women, minors, insane persons, and persons beyond the seas are not subject to the six-year limitation, but that they must be asserted within three years from the time the disability ceases, then, having made this additional exception to the six-year limitation, we should also place thereon the same limitation that applies to the claim of a married woman, minor, insane person, or one beyond the seas.

■ However, applying the rule of the majority, it does not appear that plaintiff's claim is barred. Just when its claim first accrued does not clearly appear from the petition, but it must have been less than a year before plaintiff was placed on the proclaimed list. Plaintiff was taken off the proclaimed list on July 8, 1946, and it brought suit five years and eight days thereafter. It, therefore, does not appear from the pleadings that plaintiff's claim is barred, and, therefore, defendant's motion to dismiss must be overruled, but without prejudice to its right to develop the facts and renew this defense if the facts justify it.

It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and LITTLETON, Judges, concur.