James A. GAINEY and J. L. Young, individually and on behalf of others similarly affected

v.

The BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES,

and

The Pennsylvania Railroad Company.

Civ. A. No. 32898.

United States District Court
E. D. Pennsylvania.
May 18, 1964.

Matthew J. Broderick, Dechert, Price & Rhoads, and Richard N. Clattenburg, Philadelphia, Pa., for defendants.

Allen S. Olmsted, 2nd, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for The Brotherhood of Railway & Steamship Clerks, etc.

GRIM, District Judge.

Plaintiffs have brought this class action under the Railway Labor Act for themselves and about 600 similarly situated tallymen employees of the Pennsylvania Railroad, who work in the Eastern Region of the railroad, which covers all the railroad's operations east of Altoona, Pennsylvania. The action is against plaintiffs' craft union. Originally the suit was against both the union and the railroad, but now it is against the union alone.[1] The substance of plaintiff's com-

1. Two previous suits were filed in this court arising from the same subject matter as that in the present case. Both suits were dismissed. The plaintiffs and the defendants in the two previous suits are the same as the parties in this action. Both defendants moved that the present suit be stayed until the costs in the prior two suits were paid. Judge Freedman granted this motion, 34 F.R.D. 8. Plaintiffs have paid the costs in the other two suits against the Brotherhood. They have not paid the costs in the other two suits against the Pennsylvania Railroad. Therefore, Judge Freedman's stay order still is in force in the suit against the Railroad, but it is not in force in the suit against the Brotherhood.

plaint is that the union has had and now has an opportunity to enter into a contract with the railroad which would raise the wages of the plaintiffs (tallymen of the Eastern Region) to a level equal to the wages of the tallymen in the Central Region of the railroad, but that the union has made no effort to do this because its officers wish to and do discriminate with hostile intent against plaintiffs. Plaintiffs aver further that as individuals or as a group they cannot obtain the wage increase to which they allegedly are entitled since under the law the union has the exclusive right as bargaining agent to negotiate for and enter into contracts involving wage increases.

Plaintiffs are asking in this complaint:

(a) a determination by the court by way of a declaratory judgment or otherwise that the union and the railroad conspired to act in concert and with hostile discrimination to maintain two unequal pay scales for tallymen;

(b) damages against the union for this conspiracy contrary to the Railway Labor Act;

(c) damages against the union for the unlawful discrimination practiced against the plaintiffs equal to pay losses from 1950 to the day of judgment;

(d) a return of union dues collected during the aforesaid period;

(e) a mandatory injunction compelling the union to invoke the remedies of the Railway Labor Act to resolve the dispute as to wages of tallymen in the Eastern Region of the railroad.

Defendant union has filed a motion to dismiss, which creates the question now before the court.

Three issues are raised by this motion: (1) Do the plaintiffs have a cause of action? (2) If so, have they properly stated this cause of action? (3) Does res judicata prevent them from proceeding with the prosecution of their cause of action, if they have one?

## I. DO THE PLAINTIFFS HAVE A CAUSE OF ACTION?

Where there is hostile discrimination against members of a railroad craft union because of the race of the people discriminated against, it is clear that the group discriminated against has a cause of action against the union under the Railway Labor Act to right this wrong. Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Brotherhood of R.R. Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). It is not so clear, however, whether this principle (hostile discrimination because of race) applies also to situations where, as alleged in the present case, there is hostile discrimination because of something other than race. My conclusion, however, is that it does and that the instant case presents such a situation.

The principle under which a cause of action arises under the Railway Labor Act when there is hostile discrimination by a union against certain of its members has been stated in Steele v. Louisville & N. R. Co., 323 U.S. 192, 202, 65 S.Ct. 226, 232 (1944):

"The fair interpretation of the statutory language is that the organization chosen to represent a craft is to represent all its members, the majority as well as the minority, and it is to act for and not against those whom it represents.[3] It is a principle of general application that the exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf * * *." (footnote omitted)

A more explicit explanation of this cause of action under the Railway Labor Act was stated in a similar case, Tunstall v. Brotherhood, 323 U.S. 210, 213, 65 S.Ct. 235, 237, 89 L.Ed. 187 (1944):

"We also hold that the right asserted by petitioner which is derived

from the duty imposed by the Railway Labor Act on the Brotherhood, as bargaining representative, is a federal right implied from the statute, and the policy which it has adopted."

■ Both the Steele and Tunstall cases, however, were cases involving discrimination and unfair treatment because of race. In Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953) the Supreme Court had before it a situation where there was no race problem. There the alleged discrimination involved favoritism of certain military veterans, members of a union, over other members. The case did not involve a railroad so the Railway Labor Act did not apply and it was brought under the National Labor Relations Act. The Supreme Court had no difficulty in deciding that the court had jurisdiction of the subject matter of the action (although it dismissed the action on the ground that the alleged invalid labor contract was in fact valid) saying, 345 U.S. at 337, 73 S.Ct. at 686:

> "The National Labor Relations Act, as passed in 1935 and as amended in 1947, exemplifies the faith of Congress in free collective bargaining between employers and their employees when conducted by freely and fairly chosen representatives of appropriate units of employees. That the authority of bargaining representatives, however, is not absolute is recognized in Steele v.

Louisville & N. R. Co., 323 U.S. 192, 198–199 [65 S.Ct. 226, 230], in connection with comparable provisions of the Railway Labor Act. Their statutory obligation to represent all members of an appropriate unit requires them to make an honest effort to serve the interests of all of those members, without hostility to any. Id., 323 U.S. at page 198, 202–204 [65 S.Ct. [226] 230, 231–232]; Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 211 [65 S.Ct. 235, 236]; Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768 [72 S.Ct. 1022]." [2]

■ All three of these cited cases, Steele, Tunstall and Howard, were cases of discrimination because of race. By citing them in the quotation from the Ford case, where no race problem was involved, it seems clear that the Supreme Court is of the opinion that where there is hostile discrimination, the people discriminated against have a cause of action against their union even though there may be no race question in the case. Indeed this is what was said by the Court of Appeals for the Third Circuit in Gainey v. Brotherhood,[3] 313 F. 2d 318 (1963), (the second opinion of the Court of Appeals in reference to the subject matter of the present case). The Court of Appeals affirmed the order of dismissal not because there could be no cause of action, but rather because the cause of action had not been stated properly in the complaint.

2. The Ford case suggests that the legal principle is: Both under the Railway Labor Act and under the National Labor Relations Act there is a cause of action against a union when the union discriminates against some of its members in the sense that it favors some members over others, but this cause of action exists only if the discrimination arises from hostility or bad faith such as a feeling of race hostility (the race cases) or a situation wherein the union officers are hostile because of prolonged antagonism between the officers and the members discriminated against (the contention in the present case). Conversely,

there is no cause of action where there is no hostility between the union and the members discriminated against or where the discrimination does not place an unreasonable burden on the persons discriminated against (the Ford case).

3. "Although originally employed in racial discrimination problems arising under the Railway Labor Act, the protection afforded by this doctrine has since been extended to encompass all forms of hostile discrimination. See Ford Motor Co. v. Huffman, 345 U.S. 330 [73 S.Ct. 681] * * *." Gainey v. Brotherhood, 313 F. 2d 318, 322, 323 (1963).

■ This court, therefore, has jurisdiction over the subject matter involved in the present case if a cause of action has been stated properly.

## II. HAVE THE PLAINTIFFS PROPERLY STATED THEIR CAUSE OF ACTION?

Problems of federal pleading, that is, how detailed a complaint must be, seldom reach the courts because the Federal Rules make it clear that little detailing of facts is required. However, in the present case a discussion of this problem is required because the two prior suits based on the same subject matter as this suit have been dismissed partly because the complaints did not properly state a cause of action on the question of hostile discrimination.

The averment in the present complaint with reference to hostility is:

"XV. The defendant union, contrary to the Railway Labor Act, is hostile toward the membership of the Philadelphia locals, where the bulk of the herein tallymen are located, because of the latter's opposition toward the General Chairman and the staff of the union's System Board and the International President and the staff of the Grand Lodge of the union."

In paragraph XXIII discrimination is averred by saying that the railroad and the defendant union

" * * * acting individually and in concert by acts of omission and commission planned a course of conduct designed to discriminate against Eastern Region Tallymen so that their pay scales would be approximately twenty-five dollars a month less than tallymen employed in the Central Region of the carrier; and this discrimination was agreed upon as a means of punishing the plaintiffs and other members of the defendant union in the Eastern Region

for their opposition to the union leadership. * * *"[4]

A pleading question similar to the one in the present case was presented to the Supreme Court in Conley v. Gibson, 355 U.S. 41, at 47, 48, 78 S.Ct. 99, at 103 (1957) wherein it was said:

"The respondents also argue that the complaint failed to set forth specific facts to support its general allegations of discrimination and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim'[8] that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues[9]. * * *" (footnotes omitted)

■ The complaint in the present case is not short but it contains a plain statement which gives the defendant a fair notice of what the plaintiffs' claim is and the grounds upon which it rests. Enough has been stated on the question of hostile discrimination to require an answer by the defendant and to make possible discovery procedures.

## III. MUST THE COMPLAINT BE DISMISSED BECAUSE OF THE PRINCIPLE OF RES JUDICATA?

■ The present case is a third suit in this court which has arisen from the

4. The averments made in paragraphs XV and XXIII of the complaint in the present case were not made in the complaints in the first and second cases, nor were there any other averments saying anything similar to what these paragraphs say in the present case.

same subject matter as is involved in the present case. In the first case (C.A. 26133) Judge John W. Lord, Jr., sustained a motion to dismiss, 177 F.Supp. 421 (1959). The Court of Appeals affirmed, 275 F.2d 342 (1960), and the Supreme Court refused certiorari, 363 U.S. 811, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960). In the second case, (C.A.28185) Judge Egan sustained a motion to dismiss. After Judge Egan's death, Judge Wood sustained Judge Egan's action on several post-opinion motions, including a motion for reargument, 199 F.Supp. 477 (1961). The Court of Appeals affirmed Judge Wood's decision, 313 F.2d 318 (1963). See also 303 F.2d 716 (3d Cir. 1962).

The question now is whether the issue in the present case (the contention of hostile discrimination by the union) was an issue in either of the other two cases before the court.

In the first case, Judge John W. Lord, Jr., as is his habit, wrote a thorough opinion analyzing and discussing all the issues in that case. For a number of reasons he decided that the complaint had to be dismissed. When he arrived at the question of hostile discrimination[5] he said, 177 F.Supp 421, 430, 431:

"The discrimination cases seem to be of two classes: a larger group which concerns racial discrimination —then a much smaller category comprising instances of arbitrary and capricious action within a union, in defiance of that union's own internal procedures. An overt, hostile and invidious discrimination must be demonstrated in order to raise such ground. None of those cases gives color to the assertion that there is a federal question presented by the instant complaint."

The complaint in the first case did not state a cause of action on the question of hostile discrimination, but the complaint in the present case does, and thus an issue is presented to the court which was not before it in the first case.

Most of the discussion in the opinion of the Court of Appeals in the first case concerned the claim against the railroad which was a defendant in that case. The only issue discussed by the Court of Appeals as to the claim against the union involved the question of exhaustion of internal remedies within the union by the plaintiffs. The Court held that the plaintiffs had failed to allege exhaustion of these remedies and that, therefore, their action had to be dismissed.

In the second case the Court of Appeals, after deciding that the complaint before it in that case did properly allege exhaustion of internal union remedies, came to the question of hostile discrimination. The Court said, 313 F. 2d 318, 323:

"* * * [P]laintiffs must make a showing that the action or inaction of the statutory representative (the union) complained of was motivated by bad faith, for the gravamen of the rule is 'hostile discrimination.' * * * The question which remains, therefore, is whether the complaint sets forth a grievance grounded upon bad faith and ill will of the Brotherhood. * * [B]oth of the plaintiffs' charges fail to meet the requisite standard of 'hostile discrimination.' * * *". (parenthesis added)

Therefore in the second case, as in the first, the complaint did not properly allege hostile discrimination. In this third case, we are dealing with a complaint which is substantially different from the complaint before the court in the first and second cases. The present case, therefore, is not a relitigating of a question which already has been decided by the court.

The res judicata principle involved in the present case is stated in the syllabus of United States v. International Bldg. Co., 345 U.S. 502, 73 S.Ct. 807, 97 L. Ed. 1182 (1953):

"* * * In a subsequent action between the same parties on a dif-

5. He described it as: "Discrimination as Basis of Federal Jurisdiction."

ferent claim, a judgment is conclusive only as to the point or question actually litigated and determined in the original action, not as to what might have been litigated and determined."

The Restatement of the Law of Judgments, § 50 Comment c, states:

"Even though the judgment for the defendant is based upon the failure of the plaintiff to state in his complaint facts sufficient to constitute a cause of action, the plaintiff is not necessarily precluded thereby from maintaining an action on his original cause of action. If his complaint in the later action contains further allegations, the omission of which made the complaint in the first action demurrable, the judgment in the first action is not a bar to the second action. * * * "

In Oerlikon Machine Tool Works Buehrle & Co. v. United States, 121 Ct. Cl. 616, 102 F.Supp. 417, 418 (1952) the court said:

"The present case is by the same plaintiff, on the same cause of action, and the defendant says that our former decision is res judicata. Plaintiff says that it is not, because the decision was based on its failure to allege facts necessary to state a cause of action, and that in such case a former decision is not res judicata in a later proceeding. Plaintiff's position is sustained by the authorities. * * * " (citation of authorities omitted)

Plaintiffs have a cause of action. They have averred it properly in their complaint. Res judicata does not apply.

### ORDER

And now, May 18, 1964, the motion of defendant, The Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, to dismiss the complaint of James A. Gainey and J. L. Young, individually and on behalf of others similarly affected, is denied.