Peelle, Ch. J.,
delivered tbe opinion of the court:
The claim in this case is for stores and supplies alleged to have been taken from the plantation of John and William H. Osborne, near Alexandria, La., in May, 1864, .by the military forces of the United States.
The claim of John Osborne for his one-half of the property so taken was presented to the Commissioners of Claims, who rejected the same because prior thereto the claimant had gone into bankruptcy. Thereafter the claim was referred to this court by the Committee on War Claims of the House of Representatives under the act of March 3, 1883, known as the Bowman Act; and the claimant having been found loyal, findings were made on the merits and certified to Congress, and the amount therein allowed has since been appropriated for and paid.
The claim of William H. Osborne was not presented to the Commissioners of Claims, he having died in December, 1865 (before the creation of the Commissioners of Claims), leaving surviving him his widow and one child, then less than 1 year old. The widow subsequently intermarried with Henry H. Rogers and in 1872 died.
The claim not having been presented to the Commissioners of Claims by the widow, or by anyone representing her estate or the estate of said minor child, was for that reason barred by section 4 of the’ act of March 3, 1871, creating the Commissioners of Claims (16 .Stats. L., 525), as well as by section 3 of the Bowman Act.
The first bill (Senate, 4349), first session Fifty-sixth Congress, for the relief of William H. Osborne for his one-half of the property so taken was referred to the court by resolution of the United States Senate May 2, 1900, under section 14 of the act of March 3, 1887, known as the Tucker Act.
The provision of that section authorizing the court to find “ any facts bearing upon the question whether the bar of any statute of limitation should be removed or which shall be claimed to excuse the claimant for not having resorted to any established legal remedy,” would seem to imply that claims otherwise barred might be referred to the *48 court under that section. Such being the view of the court with respect to claims of this character, the court entertained the claim.
The claimant as tutor, under the laws of Louisiana for the minor heirs of said William H. Osborne, filed his petition setting forth the facts, and the case was docketed as No. 10196 Congressional.
Findings were made in the case and reported to Congress, including a finding that the claimant’s decedent, William H. Osborne, through whom the claim was made and from whom the stores and supplies were alleged to have been taken, was not loyal to' the Government of the United States throughout the war for the suppression of the rebellion. But as loyalty is not jurisdictional under the Tucker Act, as it is under the Bowman Act, the court found the facts on the merits of the claim.
Thereafter the claimant filed his motion for a new trial on loyalty with affidavits in support thereof, which was argued and submitted January 7, 1901; and on January 12, 1901, said motion was overruled and the findings as then amended and filed were, on January 16, 1901, on motion of the claimant’s attorney, certified to Congress. The foregoing findings are identical with those so certified except on the question of the loyalty of said William H. Osborne.
Thereafter, by resolution of. the United States Senate, bill 5615, first session Fifty-ninth Congress, then pending in the Senate, providing for an appropriation to pay said claim, was, on June 27, 1906 — more than five years after the overruling of the motion for a new trial — again referred to the court for examination and report under said act of March 3, 1887.-
The claimant’s contention is that the second reference of the claim operates to grant him a new trial and to reinvest the court with jurisdiction and power to again examine and adjudicate the claim.
When the court had complied with the act under which the claim was referred, and reported its findings to Congress, as it did, its jurisdiction was thereby exhausted; and being exhausted, it was not within the power of one branch of Con *49 gress, by the second reference of the same claim under the same act, to again clothe the court with jurisdiction to rein-vestigate or reconsider the claim. But while this is true, such rereference, the court holds, operates to return the findings of fact.
The court, by the return of the findings of fact, having thereby regained control of the case, will determine what further steps may be taken. That is to say, if such findings are in any respect based upon false or fraudulent testimony or were procured through the misconduct of any of the parties to the case, their attorneys or witnesses, the court will inquire in respect thereto until the findings so returned are purged therefrom.
The claimant contends, and the evidence seems to satisfy his contention, that the unfavorable finding on the question of loyalty of his decedent, William H. Osborne, was necessarily based on the testimony of one Dennis Kelly, as the testimony of all the other witnesses in the case was favorable to the loyalty of said decedent.
The witness, Kelly, in his first deposition, taken at Alexandria, La., in behalf of the defendants in 1890, testified in substance that said Osborne was by profession a civil engineer; that in 1863, a short time before the raid of the Federal Army under General Banks, said Osborne was employed as engineer superintending the construction of rafts in the Bed Biver at Fort De Boussey, about 30 miles below Alexandria, La., and that he had a foreman under him; that they were at the time expecting a vessel of the United States up the river known as the Queen of the West, and that the rafts were being constructed to prevent the vessels of the United States from coming up the river.
In the deposition of said Kelly, taken in Washington, D. C., in March, 1906, it appears that a few months prior thereto his attention was called to his former testimony by the claimant’s local attorney, and he disclaimed having testified as above indicated, saying that such former testimony was false; that said William H. Osborne was loyal to-the Government of the United States throughout the war for the suppression of the rebellion; that he so acted and expressed *50 himself, and was so regarded by his neighbors and friends; that he was arrested by the Confederate forces and compelled to do what he did; that he saw him under arrest, and, further, that he was not engaged as superintendent or otherwise at Fort De Eoussey in constructing rafts. He further testifies in detail favorably to the loyalty of said Osborne, and says that he came to Washington at the claimant’s expense to correct his former testimony.
In explanation of why he had so testified on his first examination, he says he was at the time intoxicated; and the claimant’s local attorney, Mr. H. L. Daigree, who cross-examined said Kelly, says under oath:
When I cross-examined Mr. Kelly in this matter in Alexandria, La., I was forced to ask him very few questions, because during that examination I discovered that he was quite intoxicated. Therefore I ceased to further examine him.”
Aside from the presumption of disloyalty to the United States arising from the residence of said William H. Os- . borne in an insurrectionary State, the finding adverse to his loyalty was based on the testimony of Dennis Kelly, and if the testimony of Kelly is eliminated from the case, the claimant is entitled to have the findings on loyalty modified.
In the Le More case (35 C. Cls. R., 9), wherein a judgment had been rendered against the claimant in the district court for the Southern District of Illinois, and on appeal to the Supreme Court had been affirmed, and the claim thus adjudicated was referred to this court under the Tucker Act, the doctrine of res judicata was held applicable, the court saying:
“ Certainly the Congress, by the language of the section of the act under which the reference was made, did not intend that the court, in the ascertainment of the facts for their information, should be governed by any other rules of evidence than those applicable to cases coming under our general jurisdiction; and if that be true, then it follows that the best evidence of the citizenship and residence of Quey-rous, through whom the claimants assert title to the cotton, must be found in the case thus determined, which has become res judicata.
*51 “ The rule is elementary that where a controverted fact has been judicially established upon the evidence by a court of competent jurisdiction such fact so established can not be again controverted in any other action of a not higher nature between the same parties. (>Spicer’s case, 5 C. Cls. R., 34, and authorities there cited.)
sis * * * *
“ For the reasons stated we must hold that the doctrine of res judicata is applicable to cases referred to the court under the act March 3, 1887, or the Bowman Act, for the reason, among others, that the court in the ascertainment of the facts in cases so referred is governed by the well-established elementary rules of the law of evidence, and being so governed the facts in such cases can- be found only by judicial means and methods.”
Later in the same case (39 C. Cls. R., 484), while that ruling was adhered to, the court said:
“ We do not believe it was the purpose of Congress by section 14 of the act of March 3, 1887 (supra), that where cases had been adjudicated and become res judicata they should again be the subject of judicial investigation by this court under that act, unless it should be clearly shown that there was such mistake in the judicial proceedings as if known to the court at the time would have affected its judgment.”
That being the rule with reference to cases which have been determined to judgment, there is no reason why the same rule should not apply in cases referred under the Tucker Act, where the court, in the exercise of judicial power in a judicial way, finds the facts for.Congress; and applying that rule to the facts in this case, respecting the loyalty of the claimant’s decedent, it is manifest from the evidence originally presented that but for the false testimony of Dennis Kelly this court would not have found adversely to the loyalty of William H. Osborne during the late civil war. In other words, if the testimony of Kelly had not been offered in evidence in the case when it was first tried, or if the present testimony of Kelly had been before the court at that time, the ruling of the court would have been different on the 'question of loyalty. Therefore, the court reaches the conclusion that the finding in respect to loyalty was based on false and misleading testimony, and, being so based, the findings in that respect must be purged therefrom, which is *52 accordingly ordered, and excluding the testimony of Kelly said William H. Osborne is found to have been loyal to the United States throughout the war for the suppression of the rebellion. ,
The former findings as thus modified in respect to loyalty, together with this opinion, will again be certified to Congress under the original reference as case No. 10196.