Peelle, Ch. J.,
delivered the opinion of the court:
The claim in this case is for stores and supplies taken by the military forces of the United States for their use from the claimant’s decedent in West Baton Rouge Parish, La., during the late civil war.
The claim was originally referred to the court by the Committee on War Claims of the House of Representatives under the act of March 3, 1883, commonly known as the Bowman Act (22 Stat. L., 485).
Under that reference the court on a preliminary inquiry found that the claimant’s decedent, from whom the stores and supplies were taken, was not loyal to the Government of the United States throughout the late civil war, and in respect thereto section 4 of that act provides:
“ In any case of a claim for supplies or stores taken by or furnished to any part of the military or naval forces of the United States for their use during the late war for the suppression of the rebellion the petition shall aver that the *127 person who furnished such supplies or stores, or from whom such supplies or stores were taken, did not give any aid or comfort to said rebellion, but was throughout the war loyal to the Government of the United States, and the fact of such loyalty shall be a jurisdictional fact; and unless the said court shall, on a preliminary inquiry, find that the person who furnished such supplies or stores, or from whom the same were taken, as aforesaid, was loyal to the Government of the United States throughout said war, the court shall not have jurisdiction of such cause, and the same shall, without further proceedings, be dismissed.”
The claimant’s decedent not having been found loyal, the court was by that section prohibited from tailing jurisdiction, and for that reason the cause was, “ without further proceedings,” dismissed.
No motion for a new trial was made, and the case was certified to Congress.
Thereafter, on June 5, 1900, as hereinbefore first set forth, the United States Senate by resolution referred to the court the bill set out providing for the payment of said claims, under the provisions of section 14 of the act of March 3, 1887, known as the Tucker Act, which reads as follows:
“ That whenever any bill, except for a pension, shall be pending in either House of Congress providing for the payment of a claim against the United States, legal or equitable, or for a grant, gift, or bounty to any person, the House in which said bill is pending may refer the same to the Court of Claims, who shall proceed with the same in accordance with the provisions of the act approved March third, eighteen hundred and eighty-three, entitled ‘An act to afford assistance and relief to Congress and the Executive Departments in the investigation of 'claims and demands against the Government,’ and report to such House the facts in the case and the amount, where the same can be liquidated, including any facts bearing upon the question whether there has been delay or laches in presenting such claim or applying for such grant, gift, or bounty, and any facts bearing upon the question whether the bar of any statute of limitation should be removed or which shall be claimed to excuse the claimant for not having resorted to any established legal remedy.”
Under the latter reference the claimants appeared and filed their petition, in which they averred the facts of the loss by their decedent, substantially as set forth under the Bowman Act reference.
*128 The claimants have, taken new evidence since the reference under the Tucker Act looking to the establishment of the loyalty of their decedent, and they submit the case both on the merits of the claim and the loyalty of the claimant, asking the court to reverse its finding that the claimant was not loyal, so made while the claim was pending under the Bowman Act; but as the fact of loyalty under the Bowman Act is “ a jurisdictional fact ” the dismissal of the cause went to judgment and is res judicata.
It may not be amiss to give here the legislative history of the several acts of Congress respecting the loyalty of a claimant for stores and supplies, showing the inhibitions placed upon the Executive and the courts as to the payment and adjudication of such claims.
By the act of March 3, 1863 (12 Stat. L., 765, 767), enlarging the jurisdiction of this court, and for other purposes, section 12 thereof, now Revised Statutes, sections 1072 and 1073, inhibited the court from rendering judgment in favor of a citizen of the United States unless it was set forth in the petition that the claimant and every prior owner thereof, where the claim had been assigned, had at all times borne true allegiance to the Government of the United States, and, whether a citizen or not, that he had not in any way voluntarily aided, abetted, or given encouragement to the rebellion against said Government, which allegiance it was therein provided “ may be traversed by the Government, and if on the trial such issue shall be decided against the claimant his petition shall be dismissed.”
By the act of March 12, 1863 (12 Stat L., 820), known as the captured and abandoned property act, which authorized the Treasury Department to sell all captured and abandoned property and to turn the proceeds thereof into the Treasury for the public use, the owners were given the right to file a petition in the Court of Claims within two years after the suppression of the rebellion to recover such proceeds on condition that such owner “ had never given aid or comfort to the present rebellion.”
By the act of July 4, 1864 (13 Stat. L., 781), ¿ntitled “ An act to restrict the jurisdiction of the Court of Claims, and to provide for the payment of certain demands for quarter *129 master stores and subsistence supplies furnished to the Army of the United States,” it was provided in the very first section “ that the jurisdiction of the Court of Claims shall not extend to or include any claim against the United States growing out of the destruction or appropriation of or damage to property by the Army or Navy, or any part of the Army or Navy engaged in the suppression of the rebellion, from the commencement to the close thereof.”
The second section of that act provides “ that all claims of loyal citizens in States not in rebellion, for quartermaster stores actually furnished,” etc., receipted for or not by the officer taking the same, shall be submitted to the Quartermaster-General, with such proof as they can present, but no allowance thereof was to be made unless that officer was “ convinced that it is just, and of the loyalty of the claimant, and that the stores had been actually received or taken for the use of and used by said Army.” The third section of that act is substantially the same, except that it applies to subsistence supplies to be passed upon by the Commissary-General.
By joint resolution of March 2, 1867 (14 Stat. L., 571), now Revised Statutes, section 8480, it was provided that it “ shall not be lawful for any officer of the United States Government to pay any account, claim, or demand against said Government which accrued or existed prior to the 13th day-of April, 1861, in favor of any person who promoted, encouraged, or in any manner sustained the late rebellion, or in favor of any person who during said rebellion was not known to be opposed thereto and distinctly in favor of its suppression; and no pardon heretofore granted or hereafter to be granted shall authorize the payment of such account, claim, or demand until this resolution is modified or repealed.”
The prohibition therein contained, notwithstanding the President’s proclamation of pardon and amnesty hereinafter referred to, ivas held by the Attorney-General in 1878 to apply to claims for bounty land. (15 Op. Atty. Gen., 450.)
That ruling led to the passage of the act- of March 11, 1898 (30 Stat. L., 274), which provides:
“ That section thirty-four hundred and eighty of the Revised Statutes of the United States be, and the same is *130 hereby, so far and no further modified and repealed as to dispense with proof of loyalty during the late war of the rebellion as a prerequisite in any application for bounty land where the proof otherwise shows that the applicant is entitled thereto.”
That act was passed long after the act of 1887, and yet the requirement as to proof of loyalty by said section 3480 was modified and repealed •“ so far and no further ” than to dispense with proof of loyalty as a “ prerequisite to any application for bounty land.”
By section 3 of the act of June 25, 1868 (15 Stat. L., 75), now Revised Statutes, section 1074, it is in substance provided that whenever it is material in any claim to ascertain whether any person did or. did not give any aid or comfort to the late rebellion, the party asserting the loyalty of such person to the United States during that period “ shall be required to prove affirmatively that such person did, during said rebellion, consistently adhere to the United States and did give no aid or comfort to persons engaged in said rebellion ; and the voluntary residence of any such person in any place where at any time during such residence the rebel force or organization held sway shall be prima facie evidence that such persons did give aid and comfort to said rebellion and to the persons engaged therein.”
By section 4 of the fourteenth amendment to the Constitution, promulgated July 28, 1868, it is, among other things, provided that “ Neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States * * * .”
Although by virtue of the proclamation of the President of December 25, 1868 (15 Stat. L., 711), full pardon and amnesty were “ declared unconditionally and without reservation to all and every person who directly or indirectly participated in the late insurrection or rebellion,’’ thereby in effect nullifying those statutes making jaroof of loyalty jurisdictional, as was held in the case of Armstrong v. United States (13 Wall., 154), yet the Congress thereafter by the act of March 3, 1871 (16 Stat. L., 525), creating the commissioners of claims and authorizing them to consider the *131 claims of citizens for stores and supplies taken for the use of the Army in States proclaimed as in insurrection against the United States, made proof of loyalty of the claimants “ before and at the time of the taking or furnishing of the property ” a prerequisite to the allowance and payment (■hereof.
By the act of June 23, 1874, section 12 (18 Stat. L., 245-248), being an act for the creation of the Court of Commissioners of Alabama Claims, it was, among other things, provided that “No claim shall be admissible or allowed by said court arising in favor of any person not entitled, at the time of his loss, to the protection of the United States in the premises, nor arising in favor of any person who did not at all times during the late rebellion bear true allegiance to the United States.”
That act was followed by the Bowman Act, wherein the loyalty of a claimant for stores and supplies was made a jurisdictional fact.
The finding of not loyal under that act and the consequent dismissal of the cause operated as a judgment in favor of the Government, and is therefore res judicata, as was held in the case of Rymarkiewicz (42 C. Cls. R., 1.) where the court, in speaking of the effect of such a finding under the Bowman Act, said:
“ When a matter has once properly passed to judgment, without fraud or collusion, in a court of competent or concurrent jurisdiction, it has become res judicata, and the same matter between the same parties can not be reopened or subsequently considered. Spicer's case (5 C. Cls. R., 34), Hollister v. Abbott (31 N. H., 448; 64 Am. Dec., 342) Case v. Beauregard (101 U. S., 688) ; Lawrence v. Milwaukee (45 Wis., 306) ; Hopkins v. Lee (6 Wheat., 109).' It is hardly necessary to say that this rule does not apply to void judgments, or to cases where judgments have been reversed, or new trials granted by the trial court.”
, % ❖ % #
“ Whatever may be the form of the order of dismissal, if such order is made it is the judgment of this court, upon the issue of loyalty, just as final and just as conclusive as any judgment it may render in any case coming under its general jurisdiction.
*132 “ We might here add. that the rule of res judicata is not alone applicable to what are generally considered by the profession as judgments, but judgments in the broader sense of the word, as embracing determinations and conclusions of other bodies than courts when the matter is within their jurisdiction.
“As was said by Earle, J., in the case of Brown v. Mayor (66 N. Y., 385) : ‘When a matter in controversy between parties has been submitted to a competent judicial tribunal, its decision thereon is final between the parties until it has been reversed, set aside, or vacated; and the rule of res adju-dicaba applies not only to the judgment of courts, but to all judicial determinations, whether made by courts in ordinary actions or in summary or special proceedings or by judicial officers in matters properly submitted for their determination.’ (/A, 390.)”
When the court has taken jurisdiction in a case and found the facts and reported them to Congress, and such facts have not been procured by fraud or false testimony, such claimant has had his day in court. (Hartiens’ case, 42 C. Cls. R., post.)
And so, as held in the Chieves case (42 C. Cls. R., post) :
“ Where the court has already taken jurisdiction and proceeded to judgment under the terms of some general law, new jurisdiction can not be acquired for the purpose of an investigation and a report of the facts pursuant to resolution under the fourteenth section of the Tucker Act, transmitting a bill providing for an appropriation of ‘ a claim, legal or equitable, against the United States.’ (Vincent v. United States, 39 C. Cls. R., 456.) Nor can renewed references under any act invest the court with jurisdiction to consider matters of fact where the report appears to be final under previous reference on the same issues, except as it shall be made to appear on the second reference that competent testimony has been overlooked, or the findings are shown to have been based on false or fraudulent testimony, or were procured through the misconduct of either party.” (Rymarkiewicz v. United States, 42 C. Cls. R., —.)
In the Le More case (35 C. Cls. R., 9) the court held that the doctrine of res judicata was applicable to cases referred to the court under the Bowman and Tucker acts; and later, in the same case (39 ibid., 484), the court, adhering to that ruling, said: ■
*133 “ We do not believe it was the purpose of Congress by section 14 of the act of March 3, 1887 {supra), that where cases had been adjudicated and become res judicata they should again be the subject of judicial investigation by this court under that act, unless it should be clearly shown that there was such mistake in the judicial proceedings as if known to the court at the time would have affected its judgment.”
No competent testimony is shown to have been overlooked by the court in reaching the conclusion it did when the case was pending under the Bowman Act. Nor is it shown that such finding of not loyal was procured by fraud or that it was based on false testimony. Hence the court holds that the reference under the Tucker Act does not operate to set said finding aside or to grant a new trial. The fact of loyalty, though jurisdictional under the Bówman Act and a material finding to be made for the information of Congress — as indicated by the legislation referred to — is not jurisdictional under the Tucker Act; and for that reason the court may proceed to find the facts on the merits, which has been done, leaving Congress to determine- whether the claim of one so found not to have been loyal to the United States during the late civil war shall be paid.
When a claimant has had his day in court under either the Bowman'or the Tucker act and his rights have been determined by the methods of a judicial proceeding conforming to the established rules of procedure and evidence and the result so reached is free from fraud or false testimony, there is no reason in law, justice, or good morals why the proceeding should not be deemed closed.
As was said in the Chieves case (supra):
“We can not attribute to Congress the intent to assume judicial power. Nor can- we attribute to Congress the intent to permit either House to burden the court with subsequent references where it appears that the jurisdiction has once been exercised and where the findings appear to be final, except as stated.”
It is ordered that the findings, together with this opinion, be certified to Congress.