Williams, Judge,
delivered the opinion of the court:
The petitioner, William King Richardson, on June 16, 1921, filed suit in this court against the United States, no. A-200, under the provisions of the act of June 25, 1910, as amended by the act of July 1, 1918, (U. S. C., title 35, sec. 68). In the petition he alleged that he ivas the owner of a valid patent no. 1141415, issued to him by the Government of the United States on June 1, 1915; that between the date of the issuance of the patent and the date of the filing of the petition, which included the period of the World War, the United States had, without the license of the petitioner and without lawful right, manufactured and used and had caused to be manufactured and used a great many ordnance projectiles embodying the invention covered in the claims of the patent, in violation and infringement of the patent. It was further alleged that the value to the United States of the use of the patent was $10,000,000, and claim for that amount was made. No jurisdictional question was involved and the issues as joined in the pleadings presented two questions for determination, first, w.as the patent valid, second, had it been infringed by the United States.
The case, after the issues had been joined, was, under the rules of the court, referred to a commissioner to take the proofs and report the facts. The commissioner proceeded to do this and, on March 5, 1928, filed his report. The case then came on for trial upon the evidence, the 'report of the commissioner, and the exceptions-thereto filed by the parties. The court, on December 1,1930, made special findings of fact and decided the case.in an opinion delivered by the Chief Justice, in which it was held, that the patent in issue was valid but that it had not been infringed by the United *950 ¡States. Motion for a new. trial was made by the plaintiff in which errors of fact and .of law were alleged. The motion for new trial was overruled on November 2,1931, whereupon the plaintiff filed his petition in the Supreme Court for writ of certiorari, which petition was denied March 17, 1932 (285 U. S. 543).
On January 17,1935 (74th Cong., 1st sesssion), the following Senate joint resolution was referred to the Committee on Military Affairs:
“Whereas W. K. Richardson, of Leavenworth, Kansas, invented a projectile consisting of three salient features, to wit: A long point, reduced cylinder length, and tapered base, now known as the ‘streamline, or boat-tail projectile’; and
“Whereas the said W. K. Richardson tendered his said invention to the United States Government in 1914; and
“Whereas the said W. K. Richardson secured letters patent for said invention on June 1, 1915,- now known as ‘patent numbered 1141415’; and
“Whereas a copy of said patent was forwarded to France by the Smithsonian Institution, and receipt of the same was acknowledged by France on August 30, 1915; and
“Whereas the United' States used this patent of W. K. Richardson during the War with Germany and Austria, and there was no projectile for cannon used in the World War other than the old square-base type until after the Richardson patent was granted; and
“Whereas the Government of the United States has never paid the said W. K. Richardson for the use of his' said patent: Therefore be it
“Resolved btf the /Senate and Mouse of Representatives of the United States of America in Congress assembled, That there be paid to the said W. K. Richardson, out of any money in the. Treasury of the United States not otherwise appropriated, the sum of $300,000 in consideration of full settlement for the use during the World War by the United States Army and Navy of the projectiles covered by his said United States patent numbered 1141415.”
On May 13, 1935, (74th Cong., 1st session) the following Senate Resolution No. 119,- was agreed to:
“Resolved, That the case of W. K. Richardson against the United States, Number A-200, be, and hereby is, remanded to the United States Court of Claims, with complete authority, the statute of limitations or rules of procedure to *951 the contrary notwithstanding, to hear and consider questions of law and fact complained of in the motion for a new trial, made January 28, 1931. Said hearing shall be upon the report and finding of facts of the Commissioner and the testimony taken at the former trial of the case, with and under the stipulation that the amount for which suit was originally brought be reduced to 3 per centum of the amount claimed in said suit. Such suit shall be advanced on the docket of the Court of Claims and promptly placed on the trial calendar. This reference is made under section 151 of the Judicial Code.”
The plaintiff on June 7, 1935, filed the petition herein allegedly in conformity with Senate Resolution No. 119, praying the court to hear and consider certain questions of law and fact pertinent to petitioner’s claim, based on the report and findings of fact of the commissioner before whom the case A-200 was heard, and the testimony taken at the trial. Paragraph 6 of the petition states: “Your petitioner hereby stipulates and agrees to the reduction in the amount ($10,000,000) claimed in the suit A-200, to the amount ($300,000) specified in said Senate Resolution 119.”
The defendant moves dismissal of the petition for the reason that the court is without jurisdiction under section 151 of the Judicial Code,[1] or the Senate Resolutions 119 and *952 35, or both, to rehear and again decide the issues of fact and law which are set forth in the petition, they now being res judicata by reason of a final judgment of the court, at a previous term, under its general jurisdiction.
Section 287 of United States Code, title 28 (Judicial Code, section 180), provides:
“The judgment of said court [Court of Claims] or of the Supreme Court of the United States, upon review of the decision of the Court of Claims as provided in section 288 of this title as to the amount due, shall be binding and conclusive upon the parties.”
Section 288 (c), U. S. C., title 28, provides:
“All judgments and decrees of the Court of Claims shall be subject to review by the Supreme Court as provided in this section, and not otherwise.”
Section 286, U. S. C., title 28 (section 179, Judicial Code), provides:
“Any final judgment against the claimant on any claim prosecuted as provided in this chapter shall forever bar any further claim or demand against the United States arising out of the matters involved in the controversy.”
The plaintiff’s claim in A-200 was founded upon a law of Congress and was one which the court under section 145 of the Judicial Code had jurisdiction to hear and determine. It was prosecuted to a final judgment, and a writ of cer-tiorari to the Supreme Court was denied. There can be no doubt, therefore, that the judgment of the Court in that case was a final determination of all matters in controversy, absolutely conclusive of the rights of the parties, and is res judicata as to all issues adjudged. United States v. Moser, 266 U. S. 236; Southern Pacific R. R. Co. v. United States, 168 U. S. 1, 48. The question for decision, therefore, is whether the doctrine of res judicata is applicable to cases referred to the Court under section 151 of the Judicial Code.
The court has heretofore considered the question presented, and in numerous cases has held that the doctrine of res judicata was applicable to cases referred to the court under section 14 of the Tucker Act, of which section 151 of the Judicial Code is a reenactment. The principle is also ap *953 plicable to cases referred under the Bowman Act, 22 Stat. 485.[2]
In Adams v. United States, 36 C. Cls. 104, the claim came to the court by a reference under the Bowman Act. Prior to that timé the’ claimant had prosecuted the same claim in this court (1. C. Cls. 431) to final judgment and had lost ón a question of law. Subsequently the Supreme Court in another case where the same point of law was involved construed the law in a manner favorable to plaintiff’s contention in this court. The claimant then came here under the provisions - of the Bowman Act. The court after stating the facts said:
“And it is not unlikely that if the law so declared by the Supreme Court had been established before the decision in the Adams case this court would have come to a conclusion favorable to the claimant. But even if that were unquestionably the fact it would not vacate or render void 1 he judgment of this court in the former case. That judgment stands unvacated and unreversed, and, though grounded upon a technicality, is a final judgment against the claimant, and consequently a bar against the same claim in a proceeding under the Bowman Act.
“As this case comes to the court by such a reference under the Bowman Act, the court has no alternative but to dismiss it for want of jurisdiction.”
In Rymarkiewicz v. United States, 42 C. Cls. 1, a claim which had previously been referred to the court by a committee of the House of Representatives under the Bowman Act, upon which the court had reported adversely to claimant on the question of loyalty, was on April 20, 1892, again referred to the court by a committee of the House under the same act. The court in declining to take jurisdiction of the second reference said:
*954 “Wlren a matter has once properly passed to judgment, without fraud or collusion, in a court of competent or concurrent jurisdiction, it has become res judicata, and the same matter between the same parties cannot be reopened or subsequently considered. * *' *
“While the jurisdiction and proceedings in this court are sui generis, and particularly so in Congressional cases, there is no reason why its final conclusions upon the trial of a case, in whatever form these conclusions may be .rendered, should not have the force and stability of the final decisions of any other court. Whether a formal judgment is entered under its general jurisdiction, or a finding of facts is made in a Congressional case, in either case it is the final decision of this court and res judicata subject only to the limitations mentioned.”
In Le More & Co. v. United States, 35 C. Cls. 9, the claim came to the court by resolution of the Senate under section 14 of the Tucker Act. Prior to that time the • identical claim had been adjudicated in the Southern District of Illinois in the Ouachita Cotton case (later affirmed in 6 Wall. 521). The plaintiff, as intervener, .had been a party to suit both in the lower court and .in the Supreme Court in which judgment had been adverse to claimants. Years thereafter a bill providing for payment of the claim was referred by the Senate to the court under the Tucker Act. The court in deciding the case said:
“The rule is elementary that where a controverted fact has been judicially established upon the evidence by a court of competent jurisdiction such fact so established cannot be again controverted in any other action of a not higher nature between the same parties. (Spicer’s case and authorities there cited: 5 C. Cls. E., 34; Hopkins v. Lee, 6 Wheat., 109, 113; Case v. Beauregard, 101 U. S., 688.) * * *
“For the reasons stated we must hold that the doctrine of res judicata is applicable to cases-referred to the court under the act March 3, 1887 [Tucker Act], or the Bowman Act, for the reason, among others, that the court in the ascertainment of the facts in cases so referred is governed by the well-established elementary rules of the law of evidence, and being so governed,'the facts in such cases can be found only by judicial means and methods.”
In Chieves, Admr. v. United States, 42 C. Cls. 21, the court said:
*955 “Where the court has already taken jurisdiction and proceeded to judgment under the terms of some general law, new jurisdiction cannot be acquired for the purpose of an investigation and a report of the facts pursuant to resolution under the fourteenth section of the Tucker Act transmitting a bill providing, for an appropriation of ‘a claim” legal or equitable, agaiiist the United States. (Vincent v. United States, 39 C. Cls. R., 456.) Nor can renewed references under any act invest the court with jurisdiction to consider matters of fact where the report appears to be final under previous reference on the same issues, except as it shall be made to appear on the second reference. that competent testimony has been overlooked, or the findings are shown to have been based on false or fraudulent testimony, or were procured through the misconduct of either party. (Rymarkiewicz v. United States, ante p. 1.) We cannot attribute to Congress the intent to assume judicial power. Nor can we attribute to Congress the intent to permit either House to burden the court with subsequent references where it appears, that the jurisdiction has once been exercised and where the findings .appear to he final, except as stated.” See also Hartiens v. United States, 42 C. Cls. 42; Guttormsen v. United States, 43 C. Cls. 299.
The cases cited by the plaintiff are without exception cases where claims have been referred to the court,1 not by a single House of Congress under the provisions of section 151 or the Judicial Code, or under the provisions of the Bowman or the Tucker Acts, but by both Houses either under a j oint resolution or special act of reference. . , \
In Joseph Nock v. United States, 2 C. Cls. 451, the case had previously been adjudicated and decided against the plaintiff on a question of law. 'Congress by a joint resolution then referred the claim to. the court for “decision in accordance with the principies of equity and justice”, limiting the -judgment to a certain amount. The court, while holding that Congress cannot award a new trial nor reverse the judgment of a court of justice, said that “Congress are here to all intents and purposes the defendants, and as such they come into court through this resolution and say that they will not plead the former trial in bar, nor interpose the legal objection which defeated a recovery before, but that they thus consent upon the condition that the recovery, if any shall be had, shall not exceed a certain amount.” The *956 court took jurisdiction of the case, readjudicated the claim in accordance with the terms of the act and gaye a judgment for the plaintiff.
In Braden et al v. United States, 16 C. Cls. 389 the case was referred to the court by an act of Congress “to be heard and determined according to law and justice.” The claim, had not previously been adjudicated by the court, the claimant having in the first instance gone directly to .Congress. The case turned entirely upon the construction to be placed upon the words “to be heard and determined according to law and justice.”
In Cherokee Nation v. United States, 210 U. S. 416, the court held that the special jurisdictional act under which the case was tried in effect waived the defense of res judicata and directed the court to reexamine and redetermine whether the interest allowed in a former judgment of the court was all that should have been allowed, or whether the Cherokee Nation was entitled tó the additional interest claimed. ' The court on this interpretation of the act of reference reexamined the plaintiff’s claim for additional interest and gave judgment for the defendant.
In Pocono Pines Hotels Co. v. United States, 73 C. Cls. 447, the plaintiff in a former suit had been awarded judgment against the United States. Motion for a new trial had been made by the defendant' and overruled. Aftér the time had elapsed in which application could be made to the. Supreme Court for review of the case on writ, of certiorari the defendant made a second motion for a new trial under section 175 of the Judicial Code, which motion was also overruled. Subsequently, the judgment was submitted to Congress by the President in accordance with the applicable provisions of law. The' House passed an appropriation to pay the judgment but when the matter went before the Senate Committee on Appropriation^ it was represented to the committee, among other things, that the judgment was secured without the interestsi of the Government being fully protected; that newly discovered evidence had.become available after the rendition of the-judgment,-'which, had the new trial -been allowed, would' have been introduced estab *957 lishing conclusively the nonliability of the Government. Upon these representations and in this situation a provision was incorporated in the appropriation act of March 1, 1931, 46 Stat. 1622, referring the case to the court.to “hear testimony as to the actual facts involved in the litigation” and with instructions to report its findings of fact to Congress. The court took jurisdiction under this reference and proceeded to take the- testimony desired by Congress and to report the same by special findings of fact. The facts so found and certified wholly failed to establish the representations made before the -Senate Committee, and the judgment of the court as previously awarded was appropriated for and duly paid.
The plaintiff rests his case on the motion to dismiss the petition on the authority of the foregoing decisions. As we have pointed out these cases were'referred to the court either by acts of Congress or by joint resolutions, which have the force and effect of law. They are not in point and have no application to the question now being considered. The power of Congress by special act to' waive any defense, either legal or equitable, which the Government may have to a suit in this court, as it did in the Nock and Gherokee. Nation cases, has never been questioned. The reports .of the court are replete with cases, where Congress, impressed with the equitable justice of claims which have been rejected by the court on legal grounds, has, by special act, waived defenses of the Government which prevented recovery and conferred jurisdiction on the court to again adjudicate the case. In such instances the court proceeded in conformity with the provisions of the' act of reference and in cases, too numerous for citation here, awarded judgments to claimants whose claims had previously been rejected." Cases of this character, however, are not even remotely analogous to the present proceeding. Neither is the case of Pocono Pines Hotels Co.
The petitioner says “the case is now before the court for review and report to the-Senate on the. Richardson claim for compensation, in order that that legislative body may have the benefit of the court’s renewed consideration of the matter as a guide to the Senate for final determination of *958 Joint Eesolution 35.” This contention is no doubt based on the provisions of Senate Eesolution 119 transmitting Senate'Joint Eesolution 35 tó the court, but the resolution of reference is but the vehicle by which Senate Joint Eesolution 35 comes to the court and performs no other functions. Its provisions in no way define or fix the jurisdiction of the court. Sampson v. United States, 42 C. Cls. 378. Section 151 of the Judicial Code prescribes the duties of the court— to find by judicial methods the facts respecting the claim for which a bill (in this case the Joint Eesolution) provides payment. State of Missouri v. United States, 43 C. Cls. 327.
Senate Joint Eesolution 35 provides “That there be paid to the said W. K. Eichardson, * * * the sum of $300,000 in consideration of full settlement for the use during the World War by the United States Army and Navy of the projectiles covered by his said United States patent numbered 1141415.” This precise claim was the subject matter of suit No. A-200 in which the court made special findings of fact and entered judgment. Under the principles of res judicata, applicable to claims referred to the court under Section 151 of the Judicial Code, we are without choice in the matter and are compelled to dismiss the petition for want of jurisdiction. It is so ordered.
Whaley, Judge; LittletoN, Judge; GeeeN, Judge; and Booth, Chief Justice, concur.

 “Sec. 151. Whenever any bill, except for a pension, is pending in either House of Congress providing for the payment of a claim against the united States, legal or equitable, or for a grant, gift, or bounty to any person, the House in which such bill is pending may, for the investigation and determination of facts, refer the same to the Court of Claims, which shall proceed with the same in accordance with such rules as it may adopt and report to such House the facts in the case and the amount, where the same can be liquidated, including any facts bearing upon the question whether there has been delay or' laches in presenting such claim or applying for such grant, gift, or bounty, and any facts bearing upon the question whether the bar of any statute of limitation should be removed or which shall be claimed to excuse the claimant for not having resorted to any established legal remedy, together with such conclusions as shalL be sufficient to inform Congress of the nature and character of the demand, either as a claim, legal or equitable, or as a gratuity against the united States, and the amount, if any, legally or equitably due from the united States to the claimant: Provided, however,- That if it shall appear to the satisfaction of the court upon the facts established, that under existing laws of the provisions of this chapter, the subject matter of the bill is such that it has jurisdiction to render judgment, or decree thereon, it shall proceed to do so,, giving to either party such further opportunity for hearing as in its judgment justice shall require, and it shall report its proceedings therein to the House of Congress by which the same was referred to said court (S6 Stat. L., 11SS)."

 “That whenever a claim or matter is pending before any committee of the Senate or House of Representatives or before either House of Congress which involves the investigation and determination of facts, the committee or House may cause the same, with the vouchers, papers, proofs, and documents pertaining thereto, to be transmitted to- the Court, of Claims of the -United States, and the same shall there be proceeded in under such rules as the court may adopt. When the facts shall have been found, the court shall not enter judgment thereon, but shall report the same to the committee or to the House by which the case was transmitted for its consideration.”